454 So.2d 364 (1984)
STATE of Louisiana
v.
Malcolm Otis MORGAN.
No. KA 1548.
Court of Appeal of Louisiana, Fourth Circuit.
July 31, 1984.
*366 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Crim. Div., Harry F. Connick, Dist. Atty., Joanne C. Marier, Asst. Dist. Atty., New Orleans, for plaintiff-appellee.
John M. Lawrence, Orleans Indigent Defender Program, New Orleans, for defendant-appellant.
Before GARRISON, KLEES and WARD, JJ.
GARRISON, Judge.
The defendant, Malcolm Morgan, was charged by grand jury indictment with first degree murder in violation of La.R.S. 14:30. A twelve member jury found the defendant guilty as charged. The sentencing hearing was declared a mistrial by the judge due to the inability of the jury to agree upon a verdict. The judge later sentenced the defendant to life imprisonment without benefit of parole, probation or suspension of sentence. Defendant appeals his conviction and sentence.
The facts of this case are as follows: On June 9, 1981 at approximately 9:30 p.m., Andrew Manuel was fatally shot in the head in a stairwell on Thayer Street in the Fisher Housing Project in New Orleans. Manuel was found by the police lying face up in the stairwell and all of the pockets on his clothing had been turned inside out. No money or other property was found on the victim.
At trial, Viola Mitchell, Manuel's common-law wife, testified that she saw Manuel get out of his car at approximately 8:30 p.m. on the evening of June 9, 1981. He called to Mitchell from his car and as she walked out of her apartment and into the stairwell, she saw Morgan at the bottom of the stairs dressed in what appeared to be either a green Army fatigue outfit or a green raincoat. He was also wearing a wig on his head. This unusual appearance frightened Mitchell and prompted her to run back into her apartment. Several minutes later, she heard a shot. When she went outside shortly thereafter, she saw Manuel lying on the steps with a gunshot wound to his head. Mitchell also testified that shortly before she saw the defendant in the stairwell, she had seen Irving Johnson approach the same stairwell. Mitchell did not give the defendant's name to police investigators on the evening of the shooting.
Irving Johnson testified at trial that he was with Morgan on the evening of June 9, 1981 in the Fisher Housing Project.[1] According to Johnson, the defendant sent him to Viola Mitchell's apartment to find out if anyone was at home. When Johnson returned, the defendant was restraining Manuel with his arm and was pointing a gun to Manuel's head. Johnson heard the defendant telling Manuel to surrender his money or he would be killed. Because Manuel refused to give his money to the defendant, the defendant instructed Johnson to go through Manuel's pockets and to take everything. Johnson complied while the defendant continued to restrain Manuel. Johnson testified that after this robbery, he saw the defendant shoot Manuel. Both Johnson and the defendant then fled from the scene. According to Johnson, the defendant was wearing a green raincoat and mask at the time of the shooting. Johnson admitted on cross-examination that he had lied under oath at a previous court proceeding *367 at which he stated that he was not at the scene of the shooting and the robbery. However, he claimed that he did so because he was frightened at the time.
An eyewitness to the entire incident, Willie Stewart, testified at trial that he saw the defendant shoot Andrew Manuel on June 9, 1981. Stewart said that Irving Johnson was with the defendant and that the defendant was restraining Manuel with his arm. He also stated that the defendant had a gun pointed to Manuel's head while Johnson searched through Manuel's pockets. Although Stewart actually saw the defendant shoot Manuel, he testified that he did not come forward at the scene for fear that he would be killed because he was an eyewitness to this crime. Prior to trial, Stewart picked the defendant out of a photographic lineup conducted by Detective Marvin Cook of the New Orleans Police Department. He also identified the defendant at trial as the man that he saw shoot Andrew Manuel.
Another witness for the State was Calvin Lewis who testified that on June 7, 1981, two days prior to the Manuel homicide, he and the defendant were walking through a schoolyard and found a gun. Lewis took the gun home with him. On June 9, the defendant came to Lewis' home and got the gun. According to Lewis, the defendant returned shortly after midnight and told Lewis that he had shot someone with the gun. Morgan ran away from the Lewis home after being threatened by Lewis. Lewis then discarded the gun in a nearby garbage can.
As an alibi, the defense presented witnesses (the defendant's mother and sister) who claimed that the defendant was on their front porch at the time of the shooting. Calvin Williams testified that he picked up the defendant at 11 p.m. on June 9th and that they went to Williams' home where the defendant remained until the next morning. The defense also presented testimony by Allen Simmons who claimed that two days after the shooting, he heard Willie Stewart state that he did not know who shot Andrew Manuel.
A review of the record for errors patent reveals that the trial court failed to comply with C.Cr.P. 873 which states:
If a defendant is convicted of a felony, at least three days shall elapse between conviction and sentence. If a motion for a new trial, or in arrest of judgment, is filed, sentence shall not be imposed until at least twenty-four hours after the motion is overruled. If the defendant expressly waives a delay provided for in this article or pleads guilty, sentence may be imposed immediately.
In this case, the defendant was sentenced on the same day that his motion for new trial was denied. However, the Louisiana Supreme Court in State v. Brogdon, 426 So.2d 158 (La.1983), held that failure to comply with the twenty-four hour delay is harmless error in the absence of a showing of actual prejudice to the defendant. Because there was no showing of prejudice in this case, this was harmless error.
On appeal, the defendant alleges twelve assignments of error.

ASSIGNMENT OF ERROR # 1
The defense contends that the trial court erred in denying defendant's motion to compel discovery of a State witness' juvenile file, rap sheet, statements to counsellors and psychiatric reports. This particular State witness was Irving Johnson, a juvenile who was a co-participant in this robbery/murder and who is now serving a sentence at the Louisiana Training Institute until his twenty-first birthday. Alternatively, the defense contends that the failure of the trial judge to make an in camera inspection of these documents was reversible error.
The defendant claims that the denial of this motion violated his constitutionally guaranteed right to confrontation by way of effective cross-examination. The defense cites the recent case of State v. Smith, 437 So.2d 802 (La.1983) which states:
"When a defendant moves for production of the juvenile records of a witness the trial court is called upon to determine *368 whether the impeachment value of these adjudications is outweighed by the state's interest in maintaining the confidentiality of juvenile records." Davis v. Alaska, 415 U.S. 308, 319, 94 S.Ct. 1105, 1112, 39 L.Ed.2d 347 (1974); State v. Toledano, 391 So.2d 817, 820 (La.1980).
In the Smith case, the court remanded the case for submission to the trial judge of the witness' record of juvenile adjudications for a determination of whether its contents were required for a fair determination of the defendant's guilt or innocence.
However, as stated in the State's brief, these cases deal with disclosure of the witness' record of juvenile adjudications. The State has already produced for the defense Johnson's rap sheet which includes his criminal record. The other information requested by the defense (i.e. statements to counsellors and psychiatric reports) is arguably undiscoverable work product of the State and privileged information. Although the trial judge could have compelled the State to produce Johnson's juvenile file for the defense and could have made an in camera inspection of this file, the failure to do so was harmless error in light of the fact that Johnson's criminal record was produced. That alone provided a sufficient basis for an effective cross-examination as to the credibility of the witness. This assignment of error is without merit.

ASSIGNMENT OF ERROR # 2
The defense argues that the trial court erred in denying defendant's motion to compel disclosure of all evidence favorable to the defendant. The motion was based upon Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), which states that suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. However, the recent case of State v. Prudholm, 446 So.2d 729 (La.1984) cites the case of United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), in further explaining the Brady rule as follows:
"If a general request, or no request at all, is made for exculpatory materials a conviction will only be overturned if the omitted evidence creates a reasonable doubt that did not otherwise exist."
In this case, the defense requested disclosure of any existing prior statements made by the State's witnesses to investigating officers. The State answered that no such statements existed. Defendant claims that the State had a continuing duty to produce any such exculpatory material which surfaced and that Irving Johnson's testimony at trial in which he stated that he had previously lied under oath at a bail hearing proved the existence of exculpatory material and the failure of the State to disclose this material warrants a remand of this case.
The request made by the defense was a general one in that they were unsure whether any exculpatory statements by State witnesses existed. This omitted evidence does not create a reasonable doubt which did not otherwise exist because testimony as to Johnson's false prior statements was presented in detail at trial and was never suppressed by the State. Therefore, according to the Prudholm case, this conviction should not be overturned because of the denial of this motion and this assignment of error is without merit.

ASSIGNMENTS OF ERROR # 3, 5, 7 and 9
In these assignments of error, the defendant contends that identification procedures used in this case constitute reversible error. In assignment # 3, the defense alleges that during the hearing on the Motion to Suppress Identification, a sequestration order was violated when State witness Irving Johnson remained in the courtroom during testimony of another State witness concerning identification of the defendant as the perpetrator of the offense. The defense then filed a Motion to Prohibit Use of Testimony of the Witness and a Motion to Quash the Indictment based upon the *369 violation of the sequestration order. Both motions were denied by the trial judge.
C.Cr.P. Art. 764 provides:
Upon its own motion the court may, and upon request of the state or the defendant the court shall, order that the witnesses be excluded from the courtroom or from where they can see or hear the proceedings and refrain from discussing the facts of the case or the testimony of any witness with anyone other than the district attorney or defense counsel. The court may modify its order in the interest of justice.
This article vests discretion in the trial judge to disqualify a witness when a rule of sequestration has been violated. However, a trial judge's ruling on this issue will not be disturbed on appeal absent a clear showing of an abuse of his discretion. State v. Kimble, 407 So.2d 693 (La.1981).
In this case, Johnson was present at a pre-trial motion hearing at which Detective Cook testified as to photographic lineup procedures used in this case. Johnson's trial testimony did not include any mention of a photographic lineup because Johnson's identification of the defendant did not involve a photographic lineup. Therefore, the trial judge's decision to allow Johnson to testify at trial was not an abuse of his discretion.
Additionally, the defendant contends that a photographic lineup shown to State witness Willie Stewart was suggestive and should have been suppressed. He contends that the pre-trial photographic lineup shown to Stewart contained six photographs, five bearing a 1979 date and the sixth, the defendant's photograph, bearing a 1980 date. This does not appear to be so suggestive as to warrant a reversal of defendant's conviction.
However, in determining whether a suggestive out-of-court identification procedure is outweighed by the reliability of the identification, we must apply the five factor test set forth in Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977) which includes:
(1) the opportunity to view
(2) the degree of attention
(3) the accuracy of the description
(4) the witness' level of certainty
(5) the time between the crime and the confrontation.
In the Manson case, the Supreme Court stated that even a suggestive identification procedure does not violate due process as long as the identification possesses sufficient aspects of reliability.
First, it should be noted that there is no indication in the record that Stewart saw the dates on these pictures. The pictures in this case were not even necessary for Stewart to identify the defendant in light of the fact that he was already acquainted with the defendant. Stewart's detailed description of the crime included the positions of the defendant, the victim and Johnson throughout the entire incident. He saw the defendant point a gun to the victim's head and he was within such close range of the scene of the crime that he heard the defendant threaten to kill the victim if the victim did not comply with his demands. He testified that he actually saw the defendant shoot the victim in the head after Johnson had gone through the victim's pockets. This descriptive account of the robbery/murder certainly satisfies the test set forth in Manson. This assignment of error is without merit.
Assignments of Error # 5, # 7 and # 9 are not briefed, therefore, they are deemed abandoned. State v. Perry, 420 So.2d 139 (La.1982); State v. Allen, 431 So.2d 808 (La.App. 4th Cir.1983).

ASSIGNMENT OF ERROR # 4
In his fourth assignment of error, the defendant alleges that the trial court erred in denying his motion for mistrial based upon the failure of the State to give notice prior to trial of an inculpatory statement which was made at trial by a State witness. Defendant bases this argument on C.Cr.P. 768 which states:
Unless the defendant has been granted pretrial discovery, if the state intends to introduce a confession or inculpatory *370 statement in evidence, it shall so advise the defendant in writing prior to beginning the state's opening statement. If it fails to do so a confession or inculpatory statement shall not be admissible in evidence.
Pursuant to this article, the State filed a notice of intent to use an inculpatory statement made by the defendant to Calvin Lewis on June 10, 1981 at approximately 1:00 a.m. At trial, Lewis testified that on the evening of June 9, 1981, the defendant came to his home to get Lewis' gun. The defendant returned the gun shortly after midnight on the same evening and told Lewis that he had shot someone with it. A statement made after midnight was correctly identified by the State in its notice as a statement made on June 10, 1981. This assignment of error is without any merit whatsoever.

ASSIGNMENTS OF ERROR # 6 and # 8
In assignment of error # 6, the defendant contends that the trial court erred in denying defendant's motion for mistrial based upon a prejudicial and unresponsive answer from a state witness.
In this assignment, the defendant objects to the following testimony by Viola Mitchell:
Q. And how long before or after that did you see Malcolm Morgan?
A. I seen him before, because he was on his way upstairs, I guess to shoot me, maybe. (Tr. p. 97)
Counsel for the defendant moved for a mistrial at that time and the motion was denied. Because the remark was made by a witness, C.Cr.P. Art. 770 relating to mistrials does not apply because this article refers to remarks made by the judge, district attorney or a court official. This remark would normally fall within Art. 771 as a basis for an admonition to the jury; however, the defense did not request an admonition. An admonition has been held to be sufficient to cure any prejudice resulting from remarks made by witnesses which are voluntary and unresponsive to the prosecutor's questions when these questions do not indicate bad faith on the part of the State. State v. Joseph, 437 So.2d 280 (La.1983). Because no admonition was requested as to these remarks, assignment of error # 6 is without merit.
Defendant also contends in assignment of error # 8 that the trial court erred in overruling defendant's objection to the following speculative testimony by State witness, Willie Stewart:
Q. Why didn't you tell the police, right away?
A. Well, they had too many people around, you know. I had to think about it, trying to save my life. If I would have went and told them people what happened on the scene, right then and there, while they were still around the project, they might have shot me, just to get rid of me for being a witness. (Tr. p. 169)
Defense counsel objected to this remark by the witness but did not move for a mistrial or an admonition. In his answer, Stewart was attempting to explain his reasons for not coming forward as a witness immediately after the homicide. An admonition to the jury at this point would have cured any prejudice which resulted from this remark; however, an admonition was not requested. Although the objection to this remark probably should have been sustained, the failure of the trial judge to do so does not constitute reversible error. These assignments of error are without merit.

ASSIGNMENT OF ERROR # 10
In his tenth assignment of error, the defendant contends that the trial court erred in permitting the prosecutor to repeat improper questions even after sustaining defense counsel's objections to the questions. The defense contends that the following portion of cross-examination of the defendant constitutes reversible error:
"Q. Do you have any idea why he would come in here and lie about giving him a gun?
BY MR. LAWRENCE:
Your Honor, I object to him asking
BY THE COURT:

*371 Objection sustained.
EXAMINATION BY MR. DUBELIER:
Q. Do you think the man is lying?
BY MR. LAWRENCE:
Objection.
BY THE WITNESS: (Defendant Malcolm Morgan)
I know he's lying.
EXAMINATION BY MR. DUBELIER:
Q. You know he's lying?
A. Yes.
Q. Why do you think he's lying?
BY MR. LAWRENCE:
Same objection. (Tr. p. 272)
A case cited by the defendant, State v. Richardson, 337 So.2d 210 (La.1976), states that although such cross-examination tactics are not encouraged and are improper, they do not constitute reversible error where there is no showing of undue prejudice to the defendant. There has been no such showing of prejudice in this case. This assignment of error is without merit.

ASSIGNMENT OF ERROR # 11
Defendant originally assigned as error the trial court's refusal to give defendant's special requested jury charges. However, defendant specifically abandoned this assignment of error in his brief due to the fact that the imposition of the sentence of life imprisonment renders this assignment moot.

ASSIGNMENT OF ERROR # 12
In his final assignment of error, the defendant claims that the trial court erred in refusing to grant defendant's motion for new trial based upon his claim that the evidence was insufficient to support his conviction. Specifically, the defendant contends that the State failed to prove an essential element of the offense charged: that defendant had a specific intent to kill or to inflict great bodily harm. Additionally, he alleges that contradictory testimony by defense witnesses raised reasonable doubt as to defendant's guilt.
A conviction must be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime charged beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The defendant was convicted of first degree murder in violation of La.R.S. 14:30 which includes the killing of a human being when the offender has specific intent to kill or to inflict great bodily harm and is engaged in the perpetration of an armed robbery. At trial, the defendant was positively identified by two eyewitnesses as the person who shot the victim in the head after he and Irving Johnson robbed him. The testimony by the defendant's mother and sister which indicated that the defendant was with them at the time of the shooting was apparently not believed by the jury. Additionally, the fact that the defendant shot his victim at close range creates an inference of his specific intent to kill or to inflict great bodily harm. State v. Noble, 425 So.2d 734 (La. 1983). Therefore, viewing the evidence in the light most favorable to the prosecution, the jury could have found the defendant guilty of first degree murder beyond a reasonable doubt.
For the reasons discussed above, the conviction and sentence of the defendant are affirmed.
AFFIRMED.
NOTES
[1] Johnson is a fifteen year old boy who is now incarcerated at the Louisiana Training Institute for a manslaughter conviction stemming from the Andrew Manuel homicide.