529 So.2d 859 (1988)
STATE of Louisiana
v.
James Otis GILMORE.
No. KA-8900.
Court of Appeal of Louisiana, Fourth Circuit.
July 12, 1988.
*860 Harry F. Connick, Dist. Atty., Brian T. Treacy, Asst. Dist. Atty., New Orleans, for plaintiff-appellee State of La.
Sherry Watters, Orleans Indigent Defender Program, New Orleans, for defendant-appellant James Otis Gilmore.
Before SCHOTT, KLEES and PLOTKIN, JJ.
KLEES, Judge.
On December 2, 1982, the State filed a bill of indictment charging James Otis Gilmore and Leroy Polk with first degree murder in violation of R.S. 14:30. At his December 7, 1982 arraignment, Gilmore pled not guilty. Prior to voir dire, the State severed the trial of the defendants by filing two separate indictments. Trial commenced on behalf of Defendant Gilmore on September 28, 1983. The following day the jury returned a unanimous verdict of guilty and recommended the defendant be sentenced to serve life imprisonment. On November 4, 1983 the trial court sentenced the defendant to serve life imprisonment at hard labor. From the conviction and sentence defendant now appeals.
FACTS:
On November 23, 1982 at approximately 10:30 p.m., Cynthia Gray ended a phone conversation with her friend Octavia Edinburgh. Ms. Gray's neighbors, Kenneth and Corliss Taitt, lived in the adjacent apartment in the house. A little past 10:30 p.m., Mr. and Mrs. Taitt heard sounds of fighting in Ms. Gray's bedroom and heard *861 her scream, "Corliss, they're trying to rape me." The two ran next door, broke the glass adjacent to the front door, and entered the apartment. They saw the victim standing in her front living room, bleeding from her chest. She looked shocked and did not respond to their questions. Mrs. Taitt called the police. Officer Rudolph Thomas and his partner arrived at the apartment about three minutes after the call. Thomas found the victim groaning on the sofa, her gown drenched in blood. He searched the disordered apartment and saw broken glass adjacent to the rear door which was partially open. He called the homicide department after seeing no more signs of life in the victim.
Terry Santiago lived in the house behind the victim's apartment. He testified at trial that approximately 11:00 p.m. that evening, he heard a knock on his front door. Leroy Polk, whom Mr. Santiago knew for ten years, stood with the defendant James Gilmore on the porch. Mr. Santiago saw the defendant holding a knife with a five inch long blade. Mr. Santiago asked, "What's happening?", but there was no response. He testified that Polk asked Gilmore if there was any blood on the knife. Gilmore answered, "No, but the bitch's gown had blood all over it." (Tr.100). Mr. Santiago then told them to leave. He went for a walk in the neighborhood and saw about twenty people standing in front of Cynthia Gray's house. He spied Leroy Polk and the defendant across the street about a block away from each other. Each had changed his shirt. Mr. Santiago walked down the street to talk with his friend, Police Officer Kevin Johnson. After hearing Mr. Santiago's story, Officer Johnson called Detective Raymond Miller who headed the investigation. Later, Detective Miller presented a photographic line-up to Mr. Santiago, and he positively identified a picture of Gilmore. Mr. Santiago also identified Gilmore at trial. Detective Miller arrested the defendant on the morning of November 24, 1982.
The State's fingerprint experts testified that a set of fingerprints lifted from the rear door of Cynthia Gray's apartment matched those of the defendant. Detective Miller had determined the point of entry into the apartment was that back door. The State pathologist determined the approximate time of death was 11:55 p.m. on November 23, 1982. The victim suffered two stab wounds in the chest, one which penetrated the heart, and another wound in her right forearm. There were fresh lacerations of her vagina consistent with forcible sex.
The defense presented Officer Charles Krone, an expert in blood, semen and hair analysis, who testified the victim's blood type was not detected on the defendant's clothing. The defendant, James Gilmore testified that on the afternoon of the killing he had helped the victim carry in two bags of groceries. He entered her apartment through the back door.
On rebuttal, the State called the victim's sister who testified that she did not find any fresh groceries in the apartment. Octavia Edinburgh was recalled and said the victim worked two jobs that day and did not often shop for groceries.
Errors Patent
A review of the record reveals the trial court imposed an unlawfully lenient sentence. The defendant was found guilty of first degree murder, and the trial court sentenced him to serve life imprisonment at hard labor. Although R.S. 14:30 provides that a life sentence for this crime shall be served without benefit of parole, probation, or suspension of sentence, the minute entry fails to indicate the trial court imposed these limitations. However, an appellate court may not amend or set aside an illegally lenient sentence on its own motion when the defendant alone has appealed and the State has not sought review of the sentence. State v. Fraser, 484 So.2d 122 (La. 1986).
Additionally, C.Cr.P. art. 383 requires that the grand jury foreman sign the bill of indictment. In the present matter it appears that the signature is that of the "Deputy" foreman. In State v. Dominick, 354 So.2d 1316 (La.1978), the acting foreman signed the bill of indictment because the foreman was not present. The *862 signature of the assistant foreman was found to be substantial compliance with C.Cr.P. art. 383. In the present matter the defendant does not complain of any prejudice by the procedure, and we conclude that this error is harmless.
ASSIGNMENT OF ERROR NO. 1:
The defendant claims the trial court erred in allowing the State to file a second bill of indictment on the morning of trial, not in the presence of the grand jury, charging him alone with the crime of first degree murder. The defendant asserts that because the second indictment was not returned in open court in the presence of the grand jury, it was defective under C.Cr.P. art. 383; and any subsequent conviction rendered under that bill must be reversed.
The minute entry of the first day of trial notes the State filed separate bills of indictment against each defendant, and there were no objections on Defendant Gilmore's behalf. Under C.Cr.P. art. 704, jointly indicted defendants may be tried separately if the State so chooses. Furthermore, in the case of a grand jury indictment, no further action by the grand jury is required when the State elects to sever joined defendants. C.Cr.P. art. 705. The Louisiana Supreme Court has determined there is "no conceptual bar" in allowing the State to proceed under a separate indictment following severance of a joint indictment without rearraigning the defendant. State v. Sonnier, 379 So.2d 1336, 1349 (La.1979), appeal after remand 402 So.2d 650 (La.1981), cert. den. 463 U.S. 1229, 103 S.Ct. 3571, 77 L.Ed.2d 1412, app. den. 463 U.S. 1233, 104 S.Ct. 26, 77 L.Ed.2d 1449, rehear. den. 463 U.S. 1249, 104 S.Ct. 36, 77 L.Ed.2d 1455 (1983). The Court concluded that the separate indictment charged the same offense as the joint indictment under which the defendant had previously been arraigned; therefore, adequate notice of the charge was given and on appeal there was no showing how this procedure prejudiced the defendant.
In the present case, the State adhered to the procedures allowed by the code in severing the jointly indicted defendants, and the defense offered no objection at that time. On appeal the defendant does not complain that he was not fully notified of the charge against him nor that he suffered any prejudice. In State v. James, 305 So.2d 514 (La.1974), the bill of information charged the defendant with armed robbery of a company and not a person as required by R.S. 14:64. However, the Louisiana Supreme Court, while recognizing this technical insufficiency of the bill, upheld the conviction because the accused was not prejudiced by lack of notice and had been fairly informed of the charge against him. Supra at 518. This assignment is without merit.
ASSIGNMENT OF ERROR NO. 2:
By this assignment the defendant claims the trial court denied him a fair and impartial trial by interrupting defense counsel's questioning during voir dire and cross-examination and by commenting on the evidence and the conduct of the defense counsel.
The defendant cites numerous examples indicating where the trial court interrupted defense counsel and allegedly commented on the evidence. The defendant asserts that all of the examples "taken as a whole" show the trial court's actions in this case were inappropriate and denied the defendant a fair trial. The Louisiana Supreme Court has reversed a conviction where it found the combined effect of the conduct of the prosecutor and trial judge created the appearance that the trial judge abandoned his role as a neutral arbiter. State v. Duplessis, 457 So.2d 604 (La.1984).
Code of Criminal Procedure Art. 772 prohibits a trial judge in the presence of the jury from commenting on the facts of the case or giving an opinion as to what has been proved, not proved, or refuted. Essential to the concept of a fair trial is a requirement of complete neutrality on part of a presiding judge. A trial judge's disparaging remarks or intemperate criticism of defense counsel may constitute reversible error when such remarks adversely influence and prejudice a jury against the defendant; but to constitute reversible error, *863 the effect of the improper comments must be such as to have influenced the jury and contributed to the verdict. State v. Johnson, 438 So.2d 1091 (La.1983). However, a trial court may properly ask questions for clarification of testimony. State v. Roberson, 445 So.2d 12 (La.App. 4th Cir.1983); writ den., 449 So.2d 1344 (La. 1984).
The defendant first cites several examples of where the trial judge interrupted the defense's cross-examination of witnesses and argues these questions were not merely for clarification but amounted to comments on the evidence. The defendant first cites the following exchange:
[Defense Counsel]
So, then, it's an assumption on your part that because yourself [Octavia Edinburgh] and Ms. Gray did not discuss a man in her life, that there was no man in her life. Isn't that correct?
[Witness]
Partially
[The Court]
Well, if there is anything else, you tell us about it. Go ahead. (Tr. 34).
The trial court's question was one of clarification and not improper. Roberson, supra. Likewise, we find that the other cited exchanges simply show the trial court asking questions which clarify witnesses' testimonies and do not indicate the trial court hampered defense counsel's cross-examination.
The defendant further asserts the trial court improperly commented on the evidence which inferred the trial judge's opinion on the defendant's innocence or guilt. The defendant first claims the trial court's asking Terry Santiago "You can tell when someone was running, or when somebody was walking, can't you?" The court believed the witness's testimony. That question was asked in response to the defense's objection that Mr. Santiago's statement that the two men on his porch looked like they had been running was mere opinion. We conclude the court's question was not a comment on the evidence and did not influence the jury.
The defendant next claims the court commented on the evidence when it asked the defendant on the stand, "Why would Terry Santiago lie?", which implies the trial court believed the earlier witness. The actual exchange was as follows:
[Prosecutor]
Why is it, that he [Terry Santiago] testified that he saw you on his porch?
[Defendant]
I don't know.
[Prosecutor]
But you heard his testimony, did you not?
[Defendant]
Yes.
[Prosecutor]
So he was lying.
[Defendant]
Maybe.
[Prosecutor]
He must have been lying because he said he saw you on his porch.
[Defendant]
I wasn't on the porch.
[Prosecutor]
So he was lying.
[Defendant]
Yes
[The Court]
Well, why do you say maybe? (Tr. 244-245)
The prosecutor resumed questioning and the court's question was ignored. From our reading of the entire exchange we do not find that the trial court commented on the evidence or insinuated Ms. Santiago's testimony was true. The defendant also claims the trial court commented on the evidence when admitting into evidence the State's photographs and saying, "[I]t shows the wounds which the victim sufferedtwo wounds." Again, the defendant misquotes. Defense counsel objected to the introduction of the photograph of the victim because of its potential prejudicial effects. The court said, "Your objection is overruled with respect to Number One because it shows the wound, which the alleged victim allegedly sufferedwounds, I should say, two wounds." The pathologist *864 had previously testified the victim suffered two chest wounds, and the judge qualified his statement by using the word "allegedly." This exchange does not indicate an improper comment on the evidence which had any influence on the jury. Johnson, supra.
Finally, the defendant complains the trial judge belittled the defense attorney and obstructed effective cross-examination. Our review of the cited passages indicates that the defendant simply cited every exchange where the trial judge asked a question or determined certain questions were repetitious. We conclude that there is no showing the defendant was not allowed to effectively cross-examine any witnesses. The questions asked by the trial court called for clarification of certain aspects of the witnesses' testimonies and the defense counsel did not lodge any objections to those questions at that time. The trial transcript indicates that when the court insisted defense counsel move on to new areas on cross-examination, counsel admitted he was asking for a repetitive answer or the question had in fact been asked previously.
A careful reading of the trial transcript simply does not support the defendant's claim that the trial judge in the instant case lost his role as a neutral arbitrator or conducted the trial in such a manner as to prejudice the jury against the defendant. This assignment is without merit.
ASSIGNMENT OF ERROR NO. 3:
By this assignment the defendant contends the trial court erred in refusing to allow the defendant's witness who had violated the sequestration order to testify and in allowing the State's witness in rebuttal who had violated the same order to testify.
Prior to the opening statements, the court imposed a sequestration order. Kenneth Taitt, the victim's neighbor, was called by the State. Following his testimony and his wife's testimony, the State moved to release Mr. and Mrs. Taitt from their subpoena so that "they might either go home, or stay in the court room if they so choose." The defense stated it had no objection, and the court informed the Taitts they could remain in the courtroom. The defendant's appellate brief states the defense counsel did not consent to the release of this witness from the sequestration rule. Following the presentation of the State's evidence and the defense's first witness, the defense sought to again call Kenneth Taitt to the stand. The State objected because he had been sitting in the courtroom. The defense counsel argues that Mr. Taitt had been released from the sequestration rule, but the court responded that the defense should have insisted the witness be subject to the sequestration rule. The defense then said, "Your Honor, I'd like to call him merely to restate what he's already stated." The court concluded there was no need for the repetition of any testimony, and the defense did not lodge an objection.
The present wording of C.Cr.P. art. 764(A) was the law at the time of trial and provides:
Art. 764. Exclusion and conduct of witnesses
A. Upon its own motion the court may, and upon request of the state or the defendant the court shall, order that the witnesses be excluded from the courtroom or from where they can see or hear the proceedings and refrain from discussing the facts of the case or the testimony of any witness with anyone other than the district attorney or defense counsel. The court may modify its order in the interest of justice.
An order of sequestration is intended to assure that a witness will testify concerning his own knowledge of the case without being influenced by testimony of a prior witness and to strengthen the role of cross-examination in developing facts. State v. Kimble, 407 So.2d 693 (La.1981). This article vests discretion in the trial court to disqualify a witness when a rule of sequestration has been violated. However, a trial judge's ruling on this issue will not be disturbed absent a clear showing of an abuse of his discretion. Kimble, supra; State v. Morgan, 454 So.2d 364 (La.App. 4th Cir.1984).
There is no showing that the trial court abused its discretion in not allowing this *865 witness to testify because it was admitted by the defense counsel that the witness's testimony would be repetitive.
The defense further asserts that State's witness Catherine Gray Hayward, the victim's sister, should not have been allowed to testify because she was present for the trial.
During rebuttal, the State called Ms. Hayward who had admitted she was in the courtroom both days of trial. The trial court overruled defenses' objection that the witness should be excluded because of the violation of the sequestration rule. Ms. Hayward testified that her sister worked from 8:30 to 4:30 at a welfare office and from 5:30 to 9:30 at a department store. She stated there were few fresh groceries in her kitchen the day after the killing. This testimony was presumably presented to rebut the defendant's testimony that he helped the victim bring in at least two bags of groceries that day.
Not every violation of a sequestration order must result in the exclusion of a witness's testimony. State v. Parker, 421 So.2d 834 (La.1982); cert. den., Parker v. Louisiana, 460 U.S. 1044, 103 S.Ct. 1443, 75 L.Ed.2d 799 (1983). The trial judge may, in his discretion, refuse to disqualify an errant witness or declare a mistrial for a violation, if the purpose of sequestration has not been thwarted, or there is no evidence that the witness's testimony has been tainted. Parker, supra; State v. Johnson, 343 So.2d 155 (La.1977).
In the present case Ms. Hayward's testimony was different from all previous witnesses' testimonies, and there is no showing it was tainted or that the rule of sequestration had been thwarted. This assignment lacks merit.
RECOMMENDATION:
Accordingly, for the reasons expressed above the defendant's conviction and sentence are hereby affirmed.
AFFIRMED.