SCHOTT, Chief Judge.
Defendants, Diggins and Washington, were each indicted for one count of aggravated rape (R.S. 14:42), one count of armed robbery (R.S. 14:64) and one count of conspiracy to commit armed robbery (R.S. 14:26). Diggins was found guilty as charged and was sentenced to life imprisonment, thirty years and five years as to each count respectively. Washington was convicted of sexual battery (R.S. 14:43.1), armed robbery, and conspiracy to commit armed robbery and was sentenced to ten years, forty years, and five years as to each respective crime.
On August 30, 1987, between 7:00 and 7:30 p.m., the victim a female assistant manager at a restaurant in the Riverwalk, went to the storeroom to place the day’s cash receipts in the restaurant’s safe. After unlocking the storeroom door, she saw two black males, one taller than the other. The taller one, later identified as Diggins, grabbed her while the other, later identified as Washington, held a gun. They took the money from her as well as her jewelry. They handcuffed her arms around a post in the storeroom and gagged her. Diggins pulled down the victim’s overalls and underpants and vaginally raped her. Washington then put his hand inside her vagina while Diggins held the gun. Both defendants left with the money and jewelry.
Sometime later, the victim was found by a security guard who called the police. They spoke with several of the employees of the restaurant; and one of the employees, Matthew Thomas, admitted that he and another employee, Karis Scott, planned to rob the victim with the assistance of Washington, Diggins and Jerome Montgomery. Thomas worked at the restaurant the day of the robbery, and he gave a set of keys for the storeroom to Scott. Scott let defendants into the storeroom and returned the keys to Thomas.
A search warrant was obtained for Dig-gins’ apartment where a large amount of money was seized as was clothing that was worn by defendants at the time of the robbery. While the search was taking place, Washington arrived at the apartment.
The victim identified the defendants from photographic arrays presented to her on September 17. At the trial she identified them as the perpetrators without equivocation. Thomas testified as to his part in the robbery scheme to be carried out by defendants. A finger print on a paper bag used to gag the victim was identified as Diggins’ print.
A review of the record for errors patent reveals none. Washington assigned and argued four errors and Diggins, 13, of which he briefed and argued Nos. 3,5,6,11, and 13. The others are considered abandoned. Uniform Rules — Courts of Appeal, Rule 2-12.4.
Washington assignment two and Diggins assignment eleven:
Both defendants assign as error comments by the trial judge regarding Officer McKinsey who was qualified as a latent fingerprint expert by the state. Defendants argue that the trial judge improperly commented on the evidence when she referred to McKinsey as “an expert for the court”, during his cross-examination by counsel for Diggins. The following took place:
Q. Sir, you work for the City of New Orleans, Police Department?
A. Correct
Q. You feel like you are on the prosecution’s team here today?
BY MS. COLEY:
Objection.
BY THE COURT:'
*1305 This is an expert for the Court, Mr. Re-gan.
BY MR. REGAN:
I object to the Court’s comment.
BY THE COURT:
I’m telling you that this gentleman is an expert for the Court.
BY MR. REGAN:
Note my objection.
It appears that the trial judge meant to say that the officer had been qualified as an expert by the court, but used a bad choice of words. If interpreted as a comment on the evidence of violation of C.Cr.P. art. 772 it does not constitute reversible error unless its effect is such as to have influenced the jury and contributed to the verdict. State v. Gilmore, 529 So.2d 859, 862-863 (La.App. 4th Cir.1988) Defendants have not shown how these comments had this effect, and from our review of the entire record including the whole of McKin-sey’s testimony we are convinced beyond any doubt that these isolated comments did not influence the jury or contribute to the verdict.
Furthermore, when McKinsey was qualified as an expert the trial judge instructed the jury to “listen to his testimony like any other person’s testimony. You still have to test for veracity and believability.” This assignment is without merit.
By his first assignment Washington argues that the trial judge improperly curtailed his cross-examination of the victim and various witnesses. None of these arguments is supported by the record. As to the victim the trial judge properly prevented defense counsel from making declarative statements as to the victim’s identifications of the defendants. Furthermore, the record shows that Washington was able to test the victim’s identifications of the perpetrators at length and in depth. Some of Washington’s questions relative to bias were properly excluded as hearsay and irrelevant. Washington’s argument that he was prevented from establishing that Thomas made an agreement with the state in return for his cooperation is likewise unsupported by the record. All the details of this agreement, reduced charges and a sentence of five years in return for his testimony, were fully brought out. Likewise, the record does not support Washington’s assertions that the trial court unfairly curtailed his questioning of Officer MeKin-sey relative to the police department’s ability to collect fingerprint evidence or Officer Burkhardt relative to supposed errors in her police report. McKinsey was not offered as a witness on the subject of collecting prints. This was done through Officer Baker whom Washington did cross-examine on the subject; and Burkhardt denied there were errors in her report so that Washington’s theory of errors creeping in between the time she took notes and later drew up her report was unfounded. The record demonstrates that the trial judge’s rulings on these matters were well within the sound discretion afforded her to regulate cross-examination and to move the trial along in an orderly fashion. This assignment is meritless.
Next Washington complains that his motion for mistrial when evidence of his prior arrest came out was wrongfully denied. When officer Burkhardt was testifying as to what she found when she searched the address where defendants were arrested she said, “I also found two arrest registers in the name of Charles Washington.” His counsel immediately moved for a mistrial and the judge responded:
“The last comment that was made by Ms. Burkhardt is to be disregarded by the jury. The jury is to be instructed to put it out of their mind. The motion for mistrial is denied.”
Defendant contends that Burkhardt was a “court official” so that her reference to his arrest records mandated a mistrial under C.Cr.P. art. 770(2). A police officer is not a “court official” under this article, a mistrial was not mandatory, and the appropriate remedy was an admonition. Art. *1306 771(2); State v. Tatum, 506 So.2d 584 (La.App. 4th Cir.1987). This assignment is meritless.
Finally, Washington contends that the trial court erred in imposing excessive sentences and consecutive sentences. The trial court was obliged to follow the guidelines of C.Cr.P. art. 894.1 and to articulate them unless the record illumined justification for the severe sentence. Additionally, the trial judge must articulate particular justification for consecutive sentences beyond a simple articulation of Art. 894.1’s guidelines. State v. Smith, 539 So.2d 993 (La.App. 4th Cir.1989). After sentencing Washington the trial judge stated: “The court finds that the sentence is appropriate in this case. This was a vicious attack on a human being of our community and it has sufficiently shaken up the entire Riverwalk of the community, plus everybody else.” The record supports this statement. It shows that Washington’s crime, like Dig-gins’, was vicious and heinous. He was a willing participant in this horrible episode of brutality perpetrated on this helpless victim. She testified that while she was handcuffed to the post, naked from the waist down, both defendants made fun of her, laughed at her, and verbally abused and threatened her while they took turns violating her. This was about the worst type of sexual battery imaginable. The trial judge noted that he and Diggins were smirking, laughing and making hand signals during trial. Washington’s lack of remorse for his terrible crime was a legitimate factor in the choice of sentences. We are satisfied that the sentences were not abusive of the trial court’s sentencing discretion considering the relevant factors discussed in State v. Smith, supra at 996 and were, indeed, quite appropriate and that further articulation was unnecessary.
By his third assignment Diggins contends that the trial judge failed to review properly a supplemental police report to determine if it contained material to which he was entitled under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). He contends that the judge took only four minutes to review the report and could have missed Brady material. The trial judge did provide defendant with four pages from the report after she reviewed it indicating that her review was adequate. In any event, at oral argument this court supplied defense counsel for Diggins with a copy of the entire report and gave him an opportunity to file a supplemental brief. He declined to do so. However, we have reviewed the report and find no Brady material. This assignment lacks merit.
By his assignment five Diggins argues that the trial court erred in excluding testimony in response to his cross examination of Officer Burkhardt as to what the victim told her. Since this was hearsay the ruling was correct. Furthermore, Diggins stated purpose, to bring out what the victim told Burkhardt regarding the appearance of the defendants, was accomplished when she was on the stand herself and testified as to what she told Burkhardt. This assignment is meritless.
By assignment six Diggins claims he was prejudiced when the judge refused to allow the jury to view his photograph while Burkhardt was testifying. Instead the judge withheld the photograph from the jury until Burkhardt finished testifying. Diggins argues that only by looking at the photograph while the officer testified could the jurors pick up discrepancies in the officer’s description of Diggins. In the first place, this idea of Diggins is impractical. Even if the picture had been given to the jury only one of the twelve could study it at one time. Furthermore, this theory is purely speculative. The jurors received the photograph immediately after Burkhardt testified and would have the benefit of counsel’s argument on the point later. Finally, the evidence of Dig-gins’ identification was so strong that nothing would have been changed had his request been granted. This assignment lacks merit.
Diggins’ last assignment also arises out of his attempt to cast doubt on the *1307 victim’s identification of him as the rapist. He tried to show that there was a strong similarity between his appearance and that of Jerome Montgomery who was apparently a close friend of Diggins, was frequently in his company, and may have been in on the original plan for the robbery. Diggins put one Michelle Me Gee on the stand and asked her, “In your opinion, do Jerome Montgomery and Booker Diggins look similar.” The court sustained the state’s objection to the question and would not allow an answer. R.S. 15:463 (in effect at the time of trial though repealed and replaced on January, 1989 by C.E. art. 701) provided that a witness could only testify as to facts within her knowledge but not as to an opinion. Diggins contends she was only being asked for her natural perception or inference from her own observation of the men. At one point during the victim’s testimony Montgomery was brought into the trial and she was asked if she ever saw him or knew him. This was after she positively identified Diggins. The jurors saw both men and could draw their own conclusion on the point. The ruling of the trial court was correct.
Accordingly, the convictions and sentences are affirmed.
AFFIRMED.
PLOTKIN, J., dissents with written reasons.