PLOTKIN, Judge.
The defendant, Paul E. Firmin (Firmin), was charged with aggravated burglary of an inhabited dwelling, to which he pled not guilty. During his original jury trial, the jury deadlocked, resulting in a mistrial. Subsequently, a second jury trial was held, after which the jury returned a lesser verdict of simple burglary of an inhabited dwelling. The defendant was sentenced to four years at hard labor, with the first year to be served without the benefit of probation, parole, or suspension of sentence.
On the morning of January 5, 1993, Bobby LeDuff was asleep in his bedroom at 2410½ St. Bernard Avenue, New Orleans, Louisiana, when he sensed the presence of some *1144 one in the room. He awoke and saw a man, whom he later identified as the defendant, holding a knife and reaching for LeDuffs wallet and beeper. LeDuff reached for his gun, after which the defendant fled the room and jumped out a window.
LeDuff, armed with his gun, chased defendant through the neighborhood. In the course of the chase, LeDuff saw his friend, Rodney Redd. Redd offered to continue to pursue the defendant in LeDuffs stead because LeDuff was clad only in his underwear. LeDuff returned home; and, Redd, who said he was unarmed, chased the defendant to an apartment building at Galvez and Allen Streets.
[⅞⅛ the meantime, LeDuff had gone home and gotten his car. He drove around the neighborhood until he saw Redd at the corner of Galvez and A.P. Tureaud Streets. Redd told LeDuff where he last saw the defendant. LeDuff then called his brother, Donald, who was a police officer. Officer LeDuff met his brother at his home, and he and Redd went to the apartment building in the officer’s unmarked ear. LeDuff also called the police to report the burglary.
When they arrived at the apartment building, Redd saw the defendant exit an apartment and pointed him out to the officer. Officer LeDuff pursued the defendant and placed him under arrest. Redd noticed that the defendant was wearing different clothes. Other police officers then arrived at the scene. The defendant was then taken to LeDuffs house, where LeDuff identified him as the burglar.
The defendant denied burglarizing Le-Duffs home and testified that he was jogging when Redd pulled out a gun and tried to stop him. The defendant said that he ran from Redd to the side of the apartment building, but did not go in, and that a man in an unmarked car then pursued him. The defendant said that this man did not identify himself as a police officer and that he stopped running when he saw the other police officers arrive.
Bernard Reed, who lived in the apartment building and knows the defendant, testified that he did not see the defendant in the budding on the day in question. The defendant’s mother, Láveme Firmin, testified that her son left home to jog after 7 a.m. She described the clothes he was wearing when he left home as the same clothes he was wearing when he was arrested. During his absence, he never returned home and changed his clothing, Mrs. Firman said.
The sole issue is whether the trial court erred in denying the defendant’s motion to disqualify sequestered witnesses in the first trial who read all or parts of their testimony in the preliminary hearing. The defendant claims he was prejudiced at his second trial because witnesses Officer Donald LeDuff, LeDuff, and Redd, all changed their testimony on critical identification facts after allegedly reading their prior testimony.
The record reveals, and the State does not deny, that a sequestration order was issued at the first trial. At that time, the defendant discovered that the witnesses were presented latheir testimony from the preliminary hearing and were allowed to read each other’s testimony. Prior to the second trial, the defendant filed a motion to disqualify the three witnesses from testifying because of their violation of the sequestration order issued in the first trial. The defendant did not formally move to sequester the witnesses in the second trial.
The trial court denied the motion to disqualify the witnesses without conducting an in-camera hearing to determine the scope or degree of the violation. The State admitted that it provided the witnesses with their pri- or testimony and that they reviewed all or part of the transcript, but claimed that no violation of the sequestration rule occurred, and that if a violation did occur, it was harmless error, because the defendant was not prejudiced.
The three witnesses testified at the second trial and admitted that the prosecutor gave them each a copy of their preliminary hearing testimony. LeDuff, the victim, testified that he possessed copies of a transcript from a prior hearing, which included his prior testimony. He admitted that he read his own testimony, but said that he could not remember how much he read of the testimony given by other witnesses, conceding that *1145 he read at least one page of his brother’s testimony. LeDuff then gave the transcript to Redd, and invited him to read it. Redd testified that he “browsed” through it and read some of the testimony given by LeDuff and by Officer LeDuff. Officer LeDuff testified that he read only his own testimony.
The defendant contends that the witnesses contrived and plotted to harmonize their testimony and eliminate prior inconsistent statements. He postulates that Officer LeDuffs investigation of the incident was based on self-interest since his brother was the victim in the alleged crime and his brother called him before officially reporting the crime. Furthermore, the defendant claims that Redd, who is a longtime friend of the victim and a security guard, joined the conspiracy to convict.
In support of his collusion theme, the defendant avers that the description of the defendant’s clothing given by LeDuff at the time of the police report and during the first trial were different from the description of the defendant’s clothing given by Officer Le-Duff and Redd. However, at the second trial, the defendant claims, LeDuff “remembered” going to the defendant’s apartment building with Redd, a fact that Redd testified to at the first 14trial, but LeDuff did not. At the second trial, LeDuff also changed his testimony concerning the amount of prior testimony he read, the defendant says, as well as his testimony concerning the defendant’s clothing in order to be consistent with Redd’s description. Finally, the defendant claims that Officer LeDuff, at the second trial, testified that the defendant was wearing a blue jacket, whereas in his prior testimony he said that the defendant was wearing jeans.
Under La.C.Cr.P. art. 764, the provisions of La.C.E. art. 615 govern the exclusion or sequestration of witnesses. La.C.E. art. 615 reads as follows:
A. On its own motion the court may, and on request of a party the court shall, order that the witnesses be excluded from the courtroom or from a place where they can see or hear the proceedings, and refrain from discussing the facts of the case with anyone other than counsel in the case....
The purpose of a sequestration order is to prevent a witness from hearing or learning of the testimony of the other witnesses before he takes the stand, preventing the witness from deliberately tailoring his testimony to that of other witnesses. A sequestration order is also intended to exclude conscious and subconscious influence by one witness upon another. An order sequestering the witnesses is designed to do two things: (1) insure that a witness will testify from to his own knowledge of the case without being influenced by the testimony of another witness and (2) strengthen the role of cross-examination in developing facts. State v. Kimble, 407 So.2d 693 (La.1981); State v. Gilmore, 529 So.2d 859 (La.App. 4th Cir.1988). When the rule is violated, the cross examiner finds it more difficult to expose fabrication, collusion, inconsistencies or inaccuracies with respect to witnesses who have heard or learned about testimony from another witness.
L.C.E. art 615 does not expressly prohibit the reading of prior sworn testimony before trial. Sequestration begins when the order for sequestration issues and ends with the close of all testimony. A witness may read his prior testimony before trial to refresh his memory. Additionally, the rule does not bar, prior to trial, communications or discussions of the circumstances of a ease or the reading of prior testimony between witnesses. Professional ethics require that lawyers exercise restraint and prevent the witnesses from tailoring of their testimony or instructions to eliminate inconsistencies. Witnesses are expected to testify truthfully and without shaping the testimony to match that given by other witnesses at trial.
In this case, sequestration violations of art. 615 were discovered during cross examination in the first trial. Ordinarily, the appropriate time to impose sanctions is when the violation occurs or is discovered. Art. 615(B) does not specify a time period in which to make the request or to seek sanctions. We are unable to determine from this record whether or not the defendant requested sanctions in the first trial. However, because the first trial resulted in mistrial, and we are unable to determine if the violation of *1146 the sequestration rule influenced the jury verdict, we shall decide whether a violation occurred at the first trial, which may have affected the jury in the second trial.
Concerning Officer LeDuff, nothing in the record indicates that he violated a sequestration order. He testified that he read only his own preliminary hearing testimony and none of his brother’s testimony. Thus, there was no basis to disqualify him as a witness.
With regard to LeDuff, the victim, the record reveals that the trial court did not abuse its discretion in refusing to disqualify him because no evidence indicates that his testimony was tainted by his having read a page of his brother’s preliminary hearing testimony. Officer LeDuff was primarily involved in the arrest of defendant at a time when LeDuff was not present; thus, LeDuff could not testify about the arrest.
As to Redd, again it appears that the trial court did not err in refusing to disqualify him as a witness because the main portion of his testimony dealt with his lone pursuit of defendant to the apartment building after he first saw LeDuff. His testimony on this pursuit could not have been tainted by his having read the testimony of LeDuff or Officer LeDuff since their testimony was about other facts surrounding the crime and the apprehension of defendant.
There is no evidence of collusion among the witnesses. The defendant was granted wide latitude in cross examination on this issue. The jury was aware of the inconsistencies in the testimony and the fact that the three witnesses read all or part of the prior testimony. The defendant was not denied, in the second trial, of any meaningful cross examination | aof the witnesses on this issue. The defendant has not shown that the sequestration order was violated.
Accordingly, we find that the trial judge did not abuse his discretion in refusing to disqualify the witnesses. L.C.E. art. 615(B); State v. Gilmore, supra; State v. Morgan, 454 So.2d 364 (La.App. 4th Cir.1984). This assignment of error is without merit.
The defendant’s conviction and sentence are affirmed.

AFFIRMED.