h TOBIAS, Judge.
STATEMENT OF CASE
On 24 August 1998, in case number 400-865, defendant, Gregory R. Julian (“Jul *874 ian”), was charged by bill of information with one count of possession of heroin, a violation of La. R.S. 40:966. In the same bill of information, defendant, William C. Whitley (“Whiltey”), was charged with possession with "the intent to distribute cocaine, a violation of La. R.S. 40:967. On the same date, in case number 400-868, Julian was also charged by bill of information with possession of marijuana, second offense, a violation of La. R.S. 40:966. On 26 August 1998, the defendants pled not guilty to all charges. After a suppression hearing on 9 August 1999, the trial court denied the defendants’s motions to suppress the evidence, and the defendants went to trial on that same date. Whitley was found guilty of attempted possession of cocaine. Julian was found guilty of attempted possession of heroin and possession of marijuana, second offense. The defendants waived delays, and the trial court immediately sentenced both defendants — Whitley to five years at hard labor (but the sentence was suspended and he was placed on active | ¡.probation for three years) and Julian to thirty months at hard labor on the heroin charge. The trial court suspended Julian’s sentence and placed him on three years active probation. The State filed a multiple bill of information on 25 January 2000 alleging Julian was a multiple felony offender. He admitted to the allegations of the multiple bill, and on 7 April 2000, the trial court vacated the original sentence imposed and resen-tenced Julian under the multiple offender statute to thirty months at hard labor. On the same date, the trial court sentenced Julian on the marijuana conviction to two years at hard labor.
Both cases were consolidated for appeal.

STATEMENT OF FACTS

Agent Michael Hutton, a special agent with the Federal Bureau of Alcohol, Tobacco and Firearms, participated in Whitley’s arrest on 3 June 1998. He had participated in a surveillance of 1517 La-freniere Street immediately prior to the Whitley’s arrest. He and other officers received a call on the ATF “guns hotline” regarding drug activity at the residence.. In addition, they had received numerous previous complaints concerning the residence! After receiving the complaints, Agent Hutton and his partner, Sue Pécora, set up a surveillance of the residence. The officers were on the scene less than one minute when they observed an individual, who matched the description given by the callers to the hotline, come out of an alleyway on the left side of the residence and speak with a man who was standing outside of the residence. This individual was later identified as Whitley. The second subject was holding currency in his hand. After a brief conversation, Whitley removed some type of plastic object from his right pants pocket, opened it, took something out of it, and handed it to the second subject. Whitley took ^currency from the second subject, and the second subject walked off. The officers believed that they had just watched a narcotics transaction and radioed the other task force members to move into the area. Agents Hutton and Veal arrested Whitley. Officer Randy Lewis and Agent Pé-cora went'down the alleyway from which Whitley had come. Other officers attempted to locate and arrest the buyer (the second subject) but were unable to apprehend him.
Agent Hutton conducted a pat down of Whitley. He felt a plastic container in Whitley’s pants pocket. The officer believed this was the container that Whitley had used during the narcotics transaction that they had observed. Believing the object to be narcotics, the officer removed the object from Whitley’s pocket and found *875 it to be a white film container. Agent Hutton opened the container and found it to contain six pieces of a rock like substance (later determined to be crack cocaine). Whitley was then arrested. Currency in the amount of $67.00 was found on WThitley in the search incident to the arrest. After advising the Whitley of his rights, Whitley admitted to agent Hutton that he was selling cocaine.
After observing what appeared to be a narcotics transaction, Agent Pécora and Officer Lewis walked down the alleyway towards the rear of the residence while Agents Hutton and Veal arrested Whitley. At the alleyway, the officers came upon an unlocked wooden gate, entered the alleyway and proceeded down to the rear yard. They observed four people in the yard, three men and one woman. The officers noted that a small vial and a canister on the top of a washing machine in the yard, which they believed contained crack cocaine. Some of the subjects were standing near this washing machine. All four people were arrested, including |4defendant Julian.[1] Jerome Whitley was standing near the washing machine and was counting money as the officers approached. A subsequent search revealed additional currency on him.
Officer Randy Lewis assisted in the surveillance and arrest of Julian. He testified that when Officer Lewis and Agent Pécora walked into the rear yard after proceeding down the alleyway, they noticed four people standing around a washing machine. A bottle containing several pieces of rock like substance (later identified as crack cocaine), a scale, several pieces of partially smoked marijuana cigarettes, and' a film container containing a rock like substance (later determined to be crack 'cocaine) were found on top of the washing machine. Jerome Whitley was standing next to the washing machine counting money. Gregory Julian was standing by the alleyway near the house, a few feet from the washing machine. The officers observed Julian throw a bag of green vegetable material which they believed to be marijuana near the side of the house as they entered the yard. All four people were arrested and subsequently searched. Jerome Whitley was found to be in possession of $223.00. The officers found four packets of heroin on Gregory Julian in addition to the bag of marijuana he had thrown by the house. After the officers arrested Julian and advised him of his rights, Julian told the officers that he did not sell heroin. He stated that he was a heroin user.

ERRORS PATENT AND JULIAN’S ASSIGNMENT OF ERROR NUMBER 3

A review of the record for errors patent reveals none.
| JULIAN’S ASSIGNMENT OF ERROR NUMBER 1 AND WHITLEY’S ASSIGNMENT OF ERROR NUMBER 1
In these assignments, the defendants argue that the trial court erred when it denied the defendants’ motion to suppress evidence. The defendants argue that the officers did not have probable cause to arrest Whitley because the pat down search exceeded the scope of authority allowed under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and the plain feel doctrine. The defendants also suggest that the officers exceeded their authority when they entered the backyard without a warrant.
If a police officer stops a person whom he reasonably suspects is committing, has committed, or is about to eom- *876 mit a crime, the officer may demand of the person his or her name, address, and an explanation of his or her actions. La. C.Cr.P. art. 215.1(A). If the officer reasonably suspects that he or she is in danger, the officer may frisk the outer clothing of such person for a dangerous weapon. La.C.Cr.P. art. 215.1(B). If the officer reasonably suspects that the person possesses a dangerous weapon, the officer may search the person. La. C.Cr.P. art. 215.1(B); State v. Curtis, 96-1408, pp. 2-3 (La.App. 4 Cir. 10/2/96), 681 So.2d 1287, 1289. “The officer need not be absolutely certain that the person is armed, but the officer must be warranted in his belief that his safety or that of others is in danger.” State v. Williams, 98-3059, p. 4 (La.App. 4 Cir. 3/3/99), 729 So.2d 142, 144, quoting State v. Smith, 94-1502, p. 5 (La.App. 4 Cir. 1/19/95), 649 So.2d 1078, 1082.
If in the course of a frisk pursuant to La.C.Cr.P. art. 215.1(B) an officer feels an object whose contour or mass makes its identity as contraband immediately apparent, the officer may seize it under the “plain feel” exception to |fithe warrant requirement. Minnesota v. Dickerson, 508 U.S. 366, 377, 113 S.Ct. 2130, 2137, 124 L.Ed.2d 334, (1993); State v. Anderson, 96-0810 (La.App. 4 Cir. 5/21/97), 696 So.2d 105; State v. Williams, 98-3059, pp. 6-7 (La.App. 4 Cir. 3/3/99), 729 So.2d 142, 145-146.
In the case at bar, Agent Hutton had received complaints of narcotics activity at the Whitley residence, 1517 Lafreni-ere Street. After setting up a surveillance of the area, the officer observed Whitley exit the residence from the gated alleyway that lead to the fence enclosed rear yard. Whitley walked towards the front of the house where he met a man who was standing outside the residence. Agent Hutton observed Whitley engage in a narcotics transaction with the unknown man. Hutton testified that he saw Whitley take an object out of a film canister and give it to the man. The unidentified man then gave Whitley currency. Agent Hutton radioed the other task force members to move into the area. Agents Hutton and Veal then proceeded to arrest Whitley.
Agent Hutton not only had reasonable cause to stop Whitley, but his observation of a narcotics transaction also provided probable cause to arrest Whitley. Probable cause to arrest exists when the facts and circumstances, either personally known to the arresting officer or of which he has reasonably trustworthy information, are sufficient to justify a person of ordinary caution in believing that the person to be arrested has committed a crime. State v. Fisher, 97-1133, pp. 4-5 (La.9/9/98), 720 So.2d 1179. In State v. Johnson, 94-1170 (La.App. 4 Cir. 8/23/95), 660 So.2d 942, 946, writs denied 95-2331, 95-3044 (La.2/2/96), 666 So.2d 1092, 1105, this court stated:
The determination of probable cause, although requiring something more than bare suspicion, does not require evidence sufficient to support a conviction. Probable [7cause, as the very name implies, deals with probabilities. Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). The determination of probable cause, unlike the determination of guilt at trial, does not require the fine resolution of conflicting evidence that a reasonable doubt or even a preponderance standard demands, and credibility determinations are seldom crucial in deciding whether the available evidence supports a reasonable belief that the person to be arrested has committed a crime. Gerstein v. Pugh, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); State v. Rodrigue, 437 So.2d 830 (La.1983). The determination of proba *877 ble cause involves factual and practical considerations of everyday life on which average men, and particularly average police officers, can be expected to act. State v. Ogden and Geraghty, 391 So.2d 434 (La.1980).
As the officers had probable cause to arrest Whitley, the seizure of the film canister and cocaine therein was valid as incidental to the arrest. See Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685, (1969); State v. Tomasetti, 381 So.2d 420 (La.1980).
Julian argues that Officer Lewis and Agent Pécora did not authority to enter the backyard without a search warrant. However, he is incorrect. Upon viewing the narcotics transaction and finding cocaine on defendant Whitley, the officers had probable cause to believe that contraband was in an area of the home down the alleyway. At the end of the alleyway was a fenced yard. Thus, exigent circumstances existed to enter the yard through the gate and alleyway to search for further contraband.
In State v. Page, 95-2401, p. 10 (La.App. 4 Cir. 8/21/96), 680 So.2d 700, 709, writ den. 96-2352 (La.2/21/97), 688 So.2d 522, this court discussed the warrantless entry into a protected area:
There is a justified intrusion of a protected area if there is probable cause to arrest and exigent circumstances. State v. Rudolph, 369 So.2d 1320, 1326 (La.1979), cert. den., Rudolph v. Louisiana, 454 U.S. 1142, 102 S.Ct. 1001, 71 L.Ed.2d 294 (1982). Exigent circumstances are exceptional circumstances which, when coupled with probable cause, justify an entry into a “protected” area that, without those exceptional circumstances, would be unlawful. Examples of exigent circumstances have been found to be escape of the defendant, avoidance of a possible violent confrontation that could cause injury to the officers and the public, and the destruction of evidence. State v. Hathaway, 411 So.2d 1074, 1079 (La.1982).
State v. Roebuck, 530 So.2d 1242 (La.App. 4 Cir.1988); State v. Woods, 591 So.2d 1323 (La.App. 4 Cir.1991); State v. Tate, 623 So.2d 908 (La.App. 4 Cir.1993); and State v. Hunter, 621 So.2d 161 (La.App. 4 Cir.1993) are all cases which, by analogy, support the proposition that the officers in this case were warranted in their entering the rear yard through the gate and alleyway without the necessity of a warrant.
In the case at bar, the officers had received complaints of narcotics activity at Whitley’s residence at 1517 Lafreniere Street. Further, Agents Hutton and Pé-cora observed Whitley engage in a narcotics transaction in the front of the residence. The officers testified that they observed Whitley walk from the alleyway on the side of the house that lead to the rear yard of the house. The alleyway lead to the front of the residence where Whitley engaged in an apparent narcotics transaction. The officers subsequently arrested Whitley and found a rock like substance that they believed to be crack cocaine on his person. Given these circumstances, probable cause existed to believe that contraband was down the alleyway and/or in the backyard.
Furthermore, the facts of the case indicate that exigent circumstances existed which permitted the warrantless search. In the present case, the police officers entered the backyard because they observed Whitley walking from the alleyway that lead to the rear yard towards the front of the residence immediately prior to the |8narcotics transaction. The officers had reasonable concerns and beliefs that any narcotics stored in the yard would be *878 destroyed if they did not act quickly. Whitley’s actions suggested that the narcotics were kept in the alleyway and/or backyard or rear of the house.
Therefore, the trial court did not err when it denied the defendants’ motions to suppress evidence. These assignments are without merit.

JULIAN’S ASSIGNMENT OF ERROR NUMBER 2

Defendant Julian also argues that the trial court erred when it allowed the State’s witnesses to read another witness’s testimony prior to testifying even though the trial court had granted defendant’s motion for sequestration of witnesses pursuant to La. C.E. art. 615.
Julian suggests that it was improper for the State to allow Agents Hutton and Pé-cora to read the transcript of Officer Lewis’ testimony from the suppression hearing prior to testifying at the trial. The record reveals that only Officer Lewis testified at the suppression hearing. On the morning of trial, defense counsel moved for and obtained a sequestration order. Almost immediately thereafter, defense counsel became aware that Agents Hutton and Pécora had read Officer Lewis’s suppression hearing testimony earlier, before his motion for sequestration was made and granted. And they were still reading the transcript or had finished reading it while the motion was being made and for a short time thereafter. Defense counsel sought to prevent Agents Hutton and Pécora from testifying, arguing that their reading of Lewis’s testimony constituted a violation of the sequestration order. The trial court disagreed and allowed the officers to testify-
|in In State v. Firmin, 93-1849, p. 4 (La.App. 4 Cir.1994), 637 So.2d 1143, 1145, this Court stated:
L[a].C.E. art. 615 does not expressly prohibit the reading of prior sworn testimony before trial. Sequestration begins when the order for sequestration issues and ends with the close of all testimony. A witness may read his prior testimony before trial to refresh his memory. Additionally, the rule does not bar, prior to trial, communications or discussions of the circumstances of a case or the reading of prior testimony between witnesses.
The defendant in Firmin attempted to disqualify three witnesses who had read their testimony from the preliminary hearing held in the case. This court concluded the trial court did not err when it denied the defendant’s motion to prevent the witnesses from testifying. The court noted that no evidence of collusion among the witnesses existed and that defense counsel was granted wide latitude in the cross-examination of the witnesses.
In the case at bar, the testimony reviewed was from a suppression hearing. A review of the hearing transcript reveals that no sequestration order was entered during that suppression hearing. Furthermore, Officer Lewis testified at the suppression hearing concerning the police report of the incident, which included information he obtained from Agents Hutton and Pécora. Thus, one can reasonably say that Agents Hutton and Pécora were reviewing their own information that they had given to Officer Lewis. Additionally, La. C.E. art. 615B, which permits a judge to disqualify a witness for violating a sequestration order, also provides the judge with other remedies: contempt or appropriate instructions to the jury. From the totality of the record, we do not find the trial court abused its discretion in the manner it handled the matter. In addition, defense counsel was granted latitude in his cross-examination of the officers.
*879 InTherefore, the trial court did not err when it denied the defendant’s request to exclude the testimony of Agents Hutton and Pécora.
This assignment of error is without merit.

CONCLUSION

For the foregoing reasons, the defendants’s convictions and sentences are affirmed.

AFFIRMED.

PLOTKIN, J., dissents with reasons.

. The others who were arrested include Delores Whitley, Jerome Whitley and Glenn Whitley.